# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**Not for Publication**

<table>
<tr>
<td>

MICHELE O'TOOLE, MARYANN MAURO, CORD MEYER, JODIE MEYER, KAREN MEYER, GLORIA EDLIN, DIANA ROE, DEBRA NELSON, MARIANN BUESING AND VICKIE GARCIA,

<em>Plaintiffs</em>,

v.

ROBERT KLINGEN, CHARLES JANDRIS, LIZ VILANO, ROBERT MURKEN, JANET DIAZ, WALTER SEAMAN, SUSAN MAURKEN, JOHN CLUZEL, ALEX KUZMIK, MADELINE VAN DUREN, TOM HYLAND, GREG ANTONETTI, CRAISSA MAGNANI AND MAHWAH EMERGENCY MEDICAL SERVICES, A NEW JERSEY NOT-FOR-PROFIT CORPORATION,

<em>Defendants</em>.

</td>
<td>

Civil Action No. 14-6333

**OPINION**

</td>
</tr>
</table>

**John Michael Vazquez, U.S.D.J.**

The present matter comes before the Court on Defendants'[1] motion to dismiss the Second Amended Complaint for failure to state a claim. Plaintiffs oppose the motion.[2] This case concerns

---

[1] Defendants include Mahwah Emergency Medical Services ("MEMS"), as well as the "Individual Defendants" who are "residents of the Township of Mahwah." Second Amended Complaint ¶¶ 3, 4. The Individual Defendants (all individually named defendants) are comprised of thirteen persons. Collectively, MEMS and the Individual Defendants are referred to herein as "Defendants."

[2] Defendants' brief in support of its motion to dismiss the Amended Complaint will be referred to hereinafter as "Def. Br." (D.E. 20); Plaintiffs' opposition to Defendants' motion to dismiss will be

allegations that Plaintiffs' constitutional rights to due process and equal protection, and their rights under the New Jersey Law Against Discrimination ("NJLAD"), were violated in connection with their applications for membership in a volunteer ambulance squad. This motion was decided without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. The Court has considered the parties' submissions and grants Defendants' motion. At the outset, Plaintiffs are collaterally estopped from litigating their status as Township of Mahwah employees and the claims as to all Individual Defendants are dismissed without prejudice (unless the claim is otherwise dismissed with prejudice). In addition, Count I is dismissed without prejudice as to 42 U.S.C. § 1983 and is dismissed with prejudice as to the New Jersey Civil Rights Act ("NJCRA"). Count II is dismissed with prejudice. Count III is dismissed with prejudice as to Section 1983 and without prejudice regarding the NJCRA. Count IV is dismissed without prejudice.

## I.   BACKGROUND

The following facts are derived from Plaintiff's Second Amended Complaint ("SAC").[3] Plaintiffs were at all relevant times members of the Mahwah Ambulance Rescue Company No. 1 ("MARS"), which is a New Jersey not-for-profit corporation. SAC ¶ 1. MARS, together with Mahwah Ambulance Company No. 4 ("Company 4"), provided ambulance and first aid services to the Township of Mahwah. *Id.* ¶ 7. MARS and Company 4 were comprised entirely of volunteers. *Id.* ¶ 9. Prior to 2013, Mahwah Township funded MARS and Company 4, and

---

referred to "Pl. Opp'n" (D.E. 21); and Defendants' reply brief will be referred to "Def. R.Br." (D.E. 22).

[3] When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). While Defendants contest many of Plaintiffs' factual allegations, they accept as true the facts for the purposes of this Motion. Def. Br. at 3.

provided them with ambulances. *Id.* ¶ 10. Members of MARS and Company 4, including Plaintiffs, were covered by worker's compensation relating to their position as volunteers, liability insurance relating to their position as volunteers, and the State of New Jersey's pension system (known as the "LOSAP" program), receiving a contribution to their pension in every year that they responded to a minimum number of calls. *Id.* ¶¶ 11, 12. Additionally, members of MARS and Company 4 received other benefits, "including uniforms, free family admissions to the [t]own [p]ool, free dog licenses and a waiver of fees for any construction permits." *Id.* ¶ 13. Plaintiffs allege that they were *de facto* employees of the Township as a result. *Id.* ¶ 14. On July 11, 2013, Mahwah Township terminated its relationship with MARS and Company 4. *Id.* ¶ 16.

Simultaneously, Mahwah Township entered into "an identical relationship with Defendant MEMS." *Id.* ¶ 17. Plaintiffs claim that "Defendant MEMS is the *de facto* successor to MARS and Company 4." *Id.* ¶ 19. Plaintiffs allege that Company 4 members, along with certain MARS members, were accepted "*en masse*" into MEMS without applying. *Id.* ¶ 21. However, "[w]hen Mahwah Township entered into the new relationship with MEMS on July 11, 2013, Plaintiff's status as *de facto* employees of Mahwah township ended." *Id.* ¶ 23. Plaintiffs had to apply for membership in MEMS, but were denied.[4] *See id.* ¶¶ 25(a)-(g) (describing seven of the Plaintiff's application attempt to MEMS). Following the denial of their applications, Plaintiffs had no opportunity to challenge "the termination of their status as *de fact[o]* employees of Mahwah Township and the deprivation of all the property rights and interests that accompanied that status." *Id.* ¶ 24.

---

[4] Specifically, Plaintiffs O'Toole and Karen Meyer claim that their applications were rejected; Plaintiffs Cord Meyer, Jodie Meyer, Mauro, and Garcia allege that their applications were "tabled," and Plaintiff Buesing states that her application was returned as incomplete. The SAC is silent as to whether Plaintiffs Edlin, Roe, and Nelson applied.

Notably, the SAC fails to mention any of the Individual Defendants by name in the body of the pleading except for three: Jandris, Klingen, and Diaz. Defendant Jandris is alleged to have created MEMS, while Defendants Klingen and Diaz are alleged to have sent denial letters to Plaintiffs. *Id.* ¶¶ 18; 25(a)-(g). The remainder of the Individual Defendants are merely named in the caption and then referred to collectively as "Individual Defendants."

Equally notable, despite claiming age discrimination in two counts, the SAC fails to state the age of any individual Plaintiff. Instead, Plaintiffs allege that their average and median ages are 58 and 54, respectively. *Id.* ¶ 47. They also allege that members of MEMS "ha[ve] an average age of 38, and a median age of 40." *Id.* ¶ 48. Thus, Plaintiffs conclude that by "denying Plaintiffs status as members/employees [in MEMS], Defendants discriminated against them on the basis of age." *Id.* ¶ 46. Subsequently, Plaintiffs brought the present action.

## II. PROCEDURAL HISTORY

Plaintiffs filed their Complaint on October 13, 2014 alleging four causes of action. D.E. 1. On July 14, 2015 and again on August 12, 2015, Plaintiffs amended their Complaint. D.E. 10, 11. The SAC alleges four counts: Count I – Denial of Due Process, Count II – Denial of Equal Protection, Count III – Denial of Equal Protection, and Count IV – Age Discrimination. SAC ¶¶ 33-51. The first three counts are brought pursuant to 42 U.S.C. § 1983 and the NJCRA, N.J.S.A. 10:6-1, *et. Seq.* The last count is brought under the NJLAD, N.J.S.A. 10:6-1, *et seq.* In lieu of answering, Defendants filed their motion to dismiss on May 2, 2016. Def. Br. Plaintiffs oppose this motion. Pl. Opp'n.

As to the first three counts, Defendants argue that dismissal is warranted because Plaintiffs have failed to show that Defendants are state actors, as required for a Section 1983 claim and the NJCRA. Def. Br. at 7-8. Additionally, Defendants argue that collateral estoppel prevents

4

Plaintiffs from relitigating the issue of whether Plaintiffs are employees of Mahwah Township since a state court already made the determination that Plaintiffs are *not* employees of the Township. *Id*. at 8-12. Regarding the fourth count, Defendants assert that Plaintiffs' have not plausibly pled their claim. *Id*. at 18-19.

Plaintiffs respond that the issue decided in state court was limited to whether they were employees within the meaning of the Open Public Meetings Act ("OPMA") and, thus, collateral estoppel does not apply. Pl. Opp'n at 4. Plaintiffs further argue that they have sufficiently alleged, both factually and legally, their right to relief under all four counts. *Id*. at 6.

### III. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id*. at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not

compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, No. 10-2945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

## IV. DISCUSSION

### A. Individual Defendants

At the outset, the Complaint is dismissed as to all Individual Defendants. There are thirteen Individual Defendants that are listed in the caption of the SAC. With the exception of Defendants Jandris, Klingen, and Diaz, the Individual Defendants are not mentioned by name in the body of the SAC. As a result, the Court is simply left to guess as to their actions vis-à-vis Plaintiffs' allegations. Indeed, the Court is left to complete speculation as to the ten Individual Defendants' relationship with MEMS. Defendant Jandris is said to have created MEMS but no factual claims are made as to him regarding Plaintiffs' substantive allegations. The factual allegations concerning Defendants Klingen and Diaz have some factual support, in that both allegedly wrote letters to seven of the Plaintiffs that rejected, tabled, or returned Plaintiffs' applications to MEMS. However, as is discussed further concerning Plaintiffs' NJLAD count, the Court is left to guess as to critical facts necessary to support Plaintiffs' SAC. The SAC is not plausibly pled as to the Individual Defendants. *See Twombly*, 550 U.S. at 570. Therefore, the Individual Defendants are dismissed without prejudice.

### B. Collateral Estoppel

Throughout the SAC, Plaintiffs refer to themselves as "*de facto* employees" of Mahwah Township. *See* SAC ¶ 14 ("Plaintiffs were *de facto* employees of Mahwah Township"), ¶ 15

6

("Plaintiffs ... had a property interest in their status as []employees of ... Mahwah Township"), ¶ 22 (same), ¶ 24 (same), ¶ 27 (same), ¶ 33 (same). Defendants claim that Plaintiffs are collaterally estopped from litigating their status as Township employees in the light of the New Jersey Superior Court's previous finding that they were not. Def. Br. at 10.

Plaintiffs filed a Complaint in the Superior Court of New Jersey, Bergen County on August 23, 2013, alleging a violation of the OPMA, N.J.S.A. 10:4-7 *et seq.*. D.E. 20-3, *O'Toole v. Township of Mahwah*, No. L-6503-13. There, the state court addressed the issue of whether the individually named plaintiffs were employees of the Township, a prerequisite for recovery under the OPMA. D.E. 20-4, Tr. 37:08-37:13. The court held, in an oral ruling by State Superior Court Judge Meehan, that the individual plaintiffs were not employees of the Township but rather volunteers of MARS. *Id.* Tr. 37:14-37:20.

The doctrine of collateral estoppel provides that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent cases based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979). In order to succeed on a case of collateral estoppel, a party must show: "(1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment." *In re Graham*, 973 F.2d 1089, 1097 (3d Cir. 1992).

The Court finds that Plaintiffs are collaterally estopped from relitigating their status as employees of the Township. First, the issue as to whether Plaintiffs were employees of the Township was involved in the state action and it was actually litigated. Moreover, both parties had a full and fair opportunity to litigate their positions. *See* D.E. 20-4, Tr. 34:10-34:13

(Defendants arguing that "plaintiffs are not employees of Mahwah," but instead are "volunteers and receive funds pursuant to LOSAP and certain other benefits such as workers' comp and uniform allowances"); *and id*. Tr. 34:21-34:24 (Plaintiffs arguing that they are employees because "they were given certain stipends, the benefits they received, and they received W-2 forms showing such income"). After oral argument, Judge Meehan made a finding that "plaintiffs are not employees, but they are rather volunteers of MARS, not the Township." *Id*. Tr. 37:14-37:16. This ruling was a valid and final judgment. *See O'Lewary v. Liberty Mut. Ins. Co.*, 923 F.2d 1062, 1066 (3d Cir. 1991) ("A judgment is 'valid' when it has been rendered by a court of competent subject matter jurisdiction and the party against whom judgment is rendered either has submitted to the jurisdiction of the court or has been afforded adequate notice."); *Dyndul v. Dyndul*, 620 F.2d 409, 412 (3d Cir. 1980) (adopting a broad view of "finality" to include "any prior adjudication of an issue in another action between the parties that is determined to be sufficiently firm to be accorded conclusive effect"). Judge Meehan likewise found that in order for plaintiffs to recover under the OPMA, "the injured party *must be* an employee of the relevant township." D.E. 20-4, Tr. 37:11-37:13 (emphasis added); *see also Rice v. Union Cty. Reg'l High Sch. Bd. of Educ.*, 155 N.J. Super 64, 73 (App. Div. 1977) (requiring notice to *employees* under the OPMA). Thus, Plaintiffs' status as employees of the Township was essential to the state court's ruling.

Plaintiffs now present the same issue in the SAC, *i.e.*, their status as employees of Mahwah. However, that issue was fully litigated in the prior action, determined by a final and valid judgement, and essential to that judgment. As a result, to the extent that Plaintiffs allegations in the SAC turn on their status as employees of Mahwah Township, they are estopped from arguing the issue as a matter of law. Plaintiffs contend that the state court's decision concerned Plaintiffs' status as employees only in regard to the OPMA. While Judge Meehan's determination was

certainly made concerning the subject matter of that suit, the OPMA, the Court could find no authority that the term "employee" is given a special definition for OPMA purposes. Moreover, Plaintiffs did not provide any such authority. The definitions provision of OPMA, N.J.S.A. 10:4-8, does not provide a distinct definition for "employee."

The only issue that remains is whether Plaintiffs' status as voluntary members, not employees, is sufficient to pursue their claims against Defendant MEMS in the SAC.

C. State Action

Counts I, II and III of the SAC bring constitutional claims pursuant to Section 1983 and the NJCRA. Section 1983 provides in part:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. Similarly, the relevant portion of the NJCRA states:

> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

N.J. Stat. Ann. 10:6-2(c).

Section 1983 provides "private citizens with a means to redress violations of federal law committed by state [actors]." *Woodyard v. Cty. of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013). Additionally, "civil claims for violations of the New Jersey Constitution can only be asserted by way of the New Jersey Civil Rights Act." *Martin v. Unknown U.S. Marshals*, 965 F. Supp. 2d

9

502, 548 (D.N.J. 2013). The NJCRA is interpreted analogously to Section 1983. *Id.* As a result, all three counts will be analyzed in light of Section 1983.

To bring a Section 1983 action, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States, and must show that the alleged deprivation was committed by a person acting "under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Cottrell v. Zagami, LLC*, No. 08-3340, 2010 WL 2652229, at *4 (D.N.J. June 23, 2010) ("[The] NJCRA does not permit[] private suits against private persons absent state action."). A person "acting under color of state law," is a person whose power is derived from state law or whose action is "made possible only because the wrongdoer is clothed with the authority of state law." *West*, 487 U.S. at 49 (internal quotation marks omitted).[5] A municipality can be a state actor for the purposes of Section 1983. *See Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690 (1978). Thus, the Township of Mahwah could be a state actor for the purposes of Section 1983, but it is not named as a defendant.

As a result, a central issue in this case turns on whether MEMS is considered a "state actor" for the purposes of Section 1983. In other words, the key determination is whether MEMS involvement with Mahwah justifies the conclusion that MEMS engaged in "state action." Both parties agree that MEMS is "a New Jersey not-for-profit corporation." SAC ¶ 3. Generally, not-for-profit corporations are private parties and not state actors. *See, e.g., Opoku v. Educ. Comm'n for Foreign Med. Graduates*, 574 F. App'x 197, 201 (3d Cir. 2014); *Gannaway v. Karetas*, 438 F. App'x 61, 65 (3d Cir. 2011) (finding that a not-for-profit healthcare center was not a state actor under § 1983).

---

[5] The terms "under color of law" and "state action" are interpreted identically. *See Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009).

Nevertheless, there are numerous contexts in which a private party's actions may be fairly

attributed to the state for purposes of Section 1983. *Downey v. Coal. Against Rape & Abuse, Inc.*,

143 F. Supp. 2d 423, 438 (D.N.J. 2001). A challenged activity may be deemed state action when:

> (1) it results from the State's exercise of 'coercive power'; (2) when
> the State provides significant encouragement, either overt or covert;
> (3) when a private actor operates as a willful participant in joint
> activity with the State or its agents; (4) when a nominally private
> entity is controlled by an agency of the State; (5) when a private
> entity has been delegated a public function by the State; or (6) when
> the private entity is entwined with governmental policies, or the
> government is entwined in its management or control.

*Id.* These tests have taken on a variety of names and forms, creating a state action doctrine that

has "not been a model of consistency." *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 632

(1991). Relevant to the present dispute are tests (5) and (6) listed above: the public function and

the pervasive entwinement tests, respectively.

While the discrete tests are relevant to a state action analysis, the question of state action

is at its base a fact-specific inquiry. *Groman v. Twp. Of Manalapan*, 47 F.3d 628, 638 (3d Cir.

1995). Thus, a private entity is deemed a state actor when there is a "close nexus" between the

state and the challenged action so that the private behavior "may be fairly treated as that of the

State itself." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295

(2001). "The purpose of this requirement is to assure that constitutional standards are invoked

only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff

complains." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). The burden to prove such a nexus rests

with the Plaintiff. *Groman*, 47 F.3d at 638.

Here, Defendant MEMS claims that Plaintiffs cannot meet the public function or pervasive

entwinement tests. Def. Br. at 12-17. Plaintiffs respond that they meet both, but do not argue that

any other standard should apply. Pl. Opp'n at 4-6. Therefore, the Court will only address the public function and pervasive entwinement tests.

The public function test asks whether the challenged action relates to a function that has been "traditionally the exclusive prerogative of the State." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 353 (1974). Courts have generally found that using this measuring stick, voluntary ambulance companies do not meet the state action requirement. *See, e.g., Groman*, 47 F.3d at 641 (rejecting the comparison between volunteer fire departments and volunteer first aid squads and finding that the first aid squad was not performing an exclusive government function and therefore was not a state actor for the purposes of Section 1983); *State v. Morrison*, No. A-0170-14T2, 2015 WL 4487594, at *4 (App. Div. July 24, 2015) (finding that a volunteer first aid and rescue squad does not act under color of state law pursuant to Section 1983). This conclusion is largely due to the limited scope of this test, which reaches "only those activities that have been 'traditionally the *exclusive* prerogative of the State.'" *Groman*, 47 F.3d at 639 (quoting *Rendell-Baker v. Khon*, 457 U.S. 830, 842 (1982)). This rigorous test is rarely satisfied, since few functions have traditionally been within the sole domain of states. *See Flagg Brothers Inc. v. Brooks*, 436 U.S. 149, 158 (1978); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995). Examples of activities that have been found to be traditionally within the exclusive purview of the State are: providing medical care for prison inmates, *West*, 487 U.S. at 54-57 (1988); holding primary elections, *Terry v. Adams*, 345 U.S. 461, 469-70 (1953); maintaining parks, *Evans v. Newton*, 382 U.S. 296 (1966); and fire protection, *Mark*, 51 F.3d at 1145.

Turning to the pervasive entwinement standard, the allegations by Plaintiffs are that MARS was "an apparent arm of the municipal government in Mahwah Township," and that MEMS is the

"*de facto* successor to MARS."[6]   SAC ¶¶ 9, 19.   Plaintiffs additionally allege that "Mahwah Township funded MARS" and "provided them with ambulances at public expense."  *Id.* ¶ 10. Thus, Plaintiffs conclude that "MEMS is the agent of Mahwah Township for selecting and employing people for the Township's ambulance and first aid service." *Id.* ¶ 10.

The pervasive entwinement test asks whether "[t[he nominally private character of the [a]ssociation is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings, and there is no substantial reason to claim unfairness in applying constitutional standards to it." *Brentwood Acad.*, 531 U.S. at 298.  Importantly, mere receipt of public funds in insufficient to demonstrate state action under this standard.  *Groman*, 47 F. 3d at 640.

In *Grogan v. Blooming Grove Volunteer Ambulance Corps*, the Second Circuit addressed the issue of whether a private volunteer ambulance squad was a state actor under the entwinement test. 768 F.3d 259, 268 (2d Cir. 2014).  There, plaintiff alleged that her constitutional rights were infringed upon by the personnel decisions of defendant, a volunteer ambulance squad.  *Id.* at 263. The *Grogan* Court found that the plaintiff had to show "that the State is so entwined with [defendant's] management that its personnel decisions are fairly attributable to the State." *Id.* at 268. Despite defendant deriving a majority of its funding from the town, the *Grogan* Court found that plaintiff failed to present evidence "that the Town appoints any portion of [defendant's] Board," "has any say in [defendant's] management or personnel decisions," or "play[ed] any role in the disciplinary process that resulted in her suspension." *Id.* at 269. Thus, the court concluded that it could not find that the town was sufficiently entwined with defendant's management or

_____

[6] It is noteworthy that Plaintiffs continually allege that Defendants are an "apparent arm" of the Township.  However, apparent state action is not cognizable under either Section 1983 or the NJCRA – either there is state action or there is not.

13

personnel decisions to render the suspension without a hearing "state action." *Id.* In other words, the Second Circuit found that the pervasive entwinement test looked not only to the general relationship between the municipality and the ambulance squad but also to their relationship regarding the particular allegations. Thus, plaintiff needed to show pervasive entwinement as to management and personnel decisions but she failed to do so.

In *Groman v. Township of Manalapan*, the Third Circuit addressed the issue of state action when plaintiffs sued Manalapan's first aid squad for an alleged violation of their constitutional rights in failing to provide adequate medical treatment. 47 F.3d at 631. In analyzing whether the volunteer first aid squad was a state actor for the purposes of Section 1983, the *Groman* court used a "general conceptual inquiry," in which it asked "the degree to which the state and the private entity exist in a 'symbiotic relationship' or under circumstances where the conduct of the private actor can be fairly imputed as that of the state."[7] *Id.* at 641. In its analysis, the Third Circuit stressed that "the interdependence between the state and private actor must be pronounced before the law will transform the private actor into a state actor." *Id.* The court therefore found that there was "no evidence that the Township controlled the first aid squad's professional conduct," so that the squad was not a state actor for the purposes of Section 1983. *Id.* at 642. The court in *Groman* stressed that the first aid squad "did not have its professional decisions dictated or guided by the state." *Id.* Thus, like in *Grogan*, the *Groman* court looked to the municipality's connection with the squad vis-à-vis the plaintiff's allegations. In *Grogan*, the issue was personnel decisions, while in *Groman*, the matter concerned professional conduct.

---

[7] In *Groman*, the Third Circuit applied the symbiotic relationship test, as opposed to the pervasive entwinement test. *Id.* However, the tests are extremely similar in application.

14

Plaintiffs have failed to meet their burden of demonstrating that MEMS was a state actor. First, as noted, volunteer ambulance squads do not meet the exclusive public function test. *See State v. Morrison*, 2015 WL 4487594, at \*4; *Groman*, 47 F.3d at 641. Second, Plaintiffs' allegation that MEMS is a state actor through its pervasive entwinement with the Township is not plausibly pled. Critically, there is no plausible allegation as to Mahwah's involvement in MEMS' personnel decisions, which is the heart of Plaintiffs' allegations. Since entwinement requires a nexus between the action alleged and the state action involved, Plaintiffs have failed to meet this standard. Even if MEMS was considered a state actor for certain purposes, there are no plausible allegations that MEMS' personnel decisions could be fairly attributed to the Township. Any such allegation is merely conclusory and devoid of factual underpinnings. *See, e.g.*, SAC ¶ 28 (Plaintiffs allege that MEMS is the "agent" of Mahwah Township "for selecting and employing people for the Township's ambulance and first aid service.").

As a result, Plaintiffs' claims against Defendant MEMS are dismissed without prejudice. Although this ruling means that the first three counts will be dismissed without prejudice, the Court will nevertheless analyze the remaining aspects of Defendants' motion should Plaintiffs attempt to cure its pleading defect with a Third Amended Complaint. Thus the Court will assume, for the sake of argument, that MEMS is a state actor in the following analysis of Counts I, II, and III.

Count I

Even if MEMS was considered a state actor, Plaintiffs have not plausibly pled a violation of due process. Plaintiffs essentially contend that they had protected property interests in their membership with MEMS and that they were denied procedural due process because they were not afforded a pre-deprivation hearing when MEMS denied their applications. An alleged right to a pre-deprivation hearing involves procedural, not substantive, due process. *Mathews v. Eldridge*,

15

424 U.S. 319, 335 (1976) (setting forth three factors to be weighed in deciding the sufficiency of pre-deprivation procedures).

"Section 1983 provides remedies for the deprivation of both procedural and substantive rights while [the NJCRA] provides remedies only for the violation of substantive rights." *Tumpson v. Farina*, 218 N.J. 450, 477 (2014). In other words, the NJCRA does not apply to procedural due process claims. *Mattson v. Aetna Life Ins. Co.*, 124 F. Supp. 3d 381, 390 (D.N.J. 2015) ("'[A] procedural due process claim cannot be brought under the NJCRA.'") (quoting *Major Tours, Inc. v. Colorel*, 799 F. Supp. 2d 376, 405 (D.N.J. 2011)). Since Plaintiffs have pled a claim of procedural due process, they cannot proceed under the NJCRA since this cause of action is not recognized under that statue. Therefore, Plaintiffs' Count I brought pursuant to the NJCRA is dismissed with prejudice.[8]

To state a claim that Plaintiffs were denied procedural due process pursuant to Section 1983, they must allege that "(1) [they were] deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures afforded [them] did not constitute 'due process of law.'" *Houston v. Twp. of Randolph*, 934 F. Supp. 2d 711, 733 (D.N.J. 2013) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 255, 234 (3d Cir. 2006)). Thus, the first step is to "determine whether the asserted individual interests are encompassed within the fourteenth amendment's protection of life, liberty, or property." *Id.*

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead have a legitimate claim of entitlement to it." *Baraka*, 481 F.3d at 205. Even in cases where a property

---

[8] Neither party analyzed the application of the NJCRA to procedural due process claims. The Court addresses it *sua sponte*.

interest exists, if the interest is *de minimis* then "the protections of due process do not attach." *Houston*, 934 F. Supp. 2d at 733. It is established that at-will employees have no protected interest in their employment and cannot prevail on a claim that their discharge constituted a violation of property rights. *Peters v. Silverton Volunteer Fire Co. No. 1*, No. A-3498-14T1, 2016 WL 6518595, at *5 (N.J. App. Div. Nov. 3, 2016). This rule extends to volunteers. *Houston*, 934 F. Supp. 2d at 734. Therefore, Plaintiffs have no property rights in their status as volunteer members of MEMS.

Plaintiffs allege, however, that they have property rights in their ancillary interests associated with their volunteer position, specifically their alleged rights concerning worker's compensation, uniforms, LOSAP (pension), dog licenses, town pool access, and construction permit fees. In *Versage v. Township of Clinton N.J.*, the Third Circuit analyzed the claims of dismissed volunteer firefighters, who argued that they had ancillary property rights to their volunteer position, including training, workers' compensation, and access to the firehouse as a social area. 984 F.2d 1359, 1370 (3d Cir. 1993). The *Versage* court applied the Supreme Court's rule that "due process do[es] not apply when the property interest involved is '*de minimis*.'" *Id.* (citing *Goss v. Lopez*, 419 U.S. 565, 576 (1975)). Finding little independent value in plaintiff's alleged benefits, the *Versage* court concluded that the benefits were "inextricably tied" to plaintiff's position as a firefighter, and were therefore were *de minimis* and not subject to due process protections. *Id.*; *see also Houston*, 934 F. Supp. 2d at 734 (finding that LOSAP benefits were "intimately tied" to plaintiff's firefighting activities).

As pled, Plaintiffs have alleged *de minimis* benefits that do not carry with them a right to due process. As noted, Plaintiffs have no property interest as volunteers to continued membership in MEMS. Plaintiffs additionally have no right to property interests that are "inextricably tied" to

their positions as volunteer first aid workers.  Plaintiffs rights to workers' compensation, liability insurance, the LOSAP program and uniforms are all dependent on Plaintiffs' membership status. *See Dunkel v. Mt. Carbon/North Maheim Fire Co.*, 970 F. Supp. 2d 374, 380-81 (M.D. Pa 2013) (finding that volunteer firefighter death benefits, life membership status, training, and social hall are *de minimis* property interests because plaintiff "cannot access these interests unless he is a member of the fire company").

The remaining stated benefits are admission to the town pool, a dog license, and waiver of fees for construction permits.  The only monetary value Plaintiffs allege for these benefits is that the construction permits "could have a value of several thousand dollars." SAC ¶ 13.  This statement is conclusory, and is not sufficient to allege that these benefits are above the threshold of *de minimis* property rights.  *See Brennan v. Kulick*, No. 01-3837, 2006 WL 2065047, at *4 (D.N.J. July 24, 2006) (finding a $300 clothing allowance a *de minimis* property interest).  The SAC fails to assign any value to the free dog licenses or pool access.  Thus, Plaintiffs have failed to allege a protectable property interest and the Court need not reach the question of whether the procedures afforded to Plaintiffs were adequate.

Count I is dismissed without prejudice as to the Section 1983 claim and with prejudice as to the NJCRA claim.

Count II

In Count II, Plaintiffs allege a violation of their right to equal protection under the state and federal constitutions because they were forced to apply for positions with MEMS while other former members of MARS and Company 4 were accepted "*en masse.*" SAC ¶¶ 38-43.  There are two methods of establishing an equal protection claim: the traditional analysis which requires a plaintiff to allege membership in a protected class, and a "class-of-one" analysis. *Falco v. Zimmer*, No. 13-1648, 2015 WL 7069653, at * 7 (D.N.J. Nov. 12, 2015).  In Count II, Plaintiffs do not

18

indicate that they are members of a protected class, and therefore must proceed under the class-of-one analysis.[9]

In a class-of-one analysis, a plaintiff must show that she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)); *see also Cuzzo v. Cimino*, No. A-5431-10T1, 2012 WL 3116814, at *3 (N.J. App. Div. July 20, 2012) (applying the Supreme Court's class-of-one analysis to an equal protection claim under the New Jersey Constitution). Ordinarily, class-of-one is a rational basis inquiry. *Valenti v. Abate*, No. 08-1609, 2009 WL 5218063, at *10 (D.N.J. Dec. 31, 2009). However, in *Engquist v. Oregon Department of Agriculture*, the Supreme Court held that the "'class-of-one' theory of equal protection [has] no place in the public employment context." 553 U.S. 591, 595 (2008). *Engquist* has been cited approvingly by courts in New Jersey. *See , e.g.*, *Shabazz-Henry v. City of Newark*, No. A-1833-14T1, 2016 WL 6156206, at *7-*8 (N.J. App. Div. Oct. 24, 2016); *Trivers v. City of Atlantic City*, No. A-3041-11T3, 2013 WL 4607152, at *5 n.1 (N.J. App. Div. Aug. 30, 2013); *Cuzzo*, 2012 WL 3116814, at *3.

Here, the Court has already ruled that Plaintiffs cannot relitigate whether they are public employees. Nevertheless, the Court can find no sound reason why the holding in *Engquist* would not apply with equal force to public volunteers. Indeed, employees who are compensated for their work would seem to be entitled to greater protections than unpaid volunteers, who receive only ancillary benefits and no monetary compensation. Thus, Plaintiffs have failed to plead an equal protection claim in Count II and this count is dismissed with prejudice.

Count III

---

[9] The class-of-one analysis was not raised by either party. The Court addresses it *sua sponte*.

Similarly, in Count III, Plaintiffs allege a violation of their right to equal protection based on age discrimination. *See* SAC ¶¶ 43-47. The Third circuit has explicitly held that a claim for age discrimination cannot be pursued under the Equal Protection Clause, but instead must be addressed under the Age Discrimination in Employment Act ("ADEA").[10] *See Purtill v. Harris*, 658 F.2d 134, 137 (3d Cir. 1981) (holding that the ADEA is the exclusive federal remedy for employment-related age discrimination claims); *see also Cataldo v. Moses*, No. 02-2588, 2005 WL 705359, at *16 (D.N.J. Mar. 29, 2005) (applying *Purtill* to hold that "state, county and municipal employees cannot pursue claims of age discrimination as the basis for an action under Section 1983"). Thus, Plaintiffs Section 1983 allegation in Count III is dismissed with prejudice.

While the ADEA preempts Plaintiffs' Section 1983 Claim, it does not necessarily preempt Plaintiffs' state constitutional claim for age discrimination brought pursuant to the NJCRA.[11] To prevail on a NJCRA equal protection claim, a plaintiff must prove that "s/he has been treated differently from persons who are similarly situated." *Renchenski v. Williams*, 622 F.3d 315, 337 (3d Cir. 2010). Since age is not a suspect class, the Equal Protection Clause only requires a rational basis for discrimination on the basis of age. *Piatt v. Police & Firemen's Ret. Sys.*, 443 N.J. Super 80, 102 (App. Div. 2015).

Here, Plaintiffs allege that their average and median ages are above the average and median ages of MEMS members. SAC ¶ 43. Therefore, Plaintiffs conclude that Defendants

---

[10] Neither party raised the issue of preemption by the ADEA. The Court addresses it *sua sponte*.

[11] The parties again do not raise the issue of whether the NJLAD preempts a NJCRA claim for age discrimination. The Court's own review revealed that the NJLAD preempts certain common law claims, but not a case on point discussing NJLAD preemption. *See Everson v. JPMorgan Chase Bank*, No. 12-7288, 2013 WL 1934666, at *2 (D.N.J. May 8, 2013) ("Because of the broad availability of remedies under the [NJLAD], both state and federal courts in New Jersey have frequently held that the [NJLAD] bars common law claims based on the same operative facts as underlie the [NJLAD] claim.").

"discriminated against them on the basis of age" contrary to 42 U.S.C. 1983 and NJSA 10:6-1. However, as with the NJLAD claim discussed below, Plaintiffs do not plausibly plead this count. Indeed, the Court does not know the age of any of the individual Plaintiffs as they merely plead the average and median age of the group collectively. Plaintiffs fails to plead that they were qualified for a position with MEMS or that MEMS had openings for which Plaintiffs were qualified. Plaintiffs also have not plausibly pled that MEMS lacked a rational basis in denying, tabling, or returning Plaintiffs' applications.

Therefore, Count III is dismissed with prejudice as to Plaintiffs' Section 1983 claim and without prejudice as to Plaintiffs' NJCRA claim.

Count IV

Lastly, Plaintiffs assert a claim of age discrimination pursuant to the NJLAD. SAC ¶¶ 47-51. In order to establish a *prima facie* case under the NJLAD, a plaintiff must establish that he "(1) belongs to a protected class, (2) applied and was qualified for a position for which the employer was seeking applicants, (3) was rejected despite adequate qualifications, and (4) after rejection the position remained open and the employer continue to seek applications for persons of plaintiff's qualifications." *Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 447 (2005). Once a plaintiff presents evidence sufficient to establish a *prima facie* case of unlawful discrimination, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the employer's actions." *Id*. at 449. If the employer meets its burden, the burden then shifts back to the plaintiff to "prove by a preponderance of evidence that the reason articulated by the employer was merely a pretext for discrimination and not the true reason for the employment decision." *Id.*

Here, Plaintiffs merely allege that they "have an average age of 58, and a median age of 54," and that members in MEMS have "an average age of 38, and a median age of 40." SAC ¶¶ 47-48. The SAC does not indicate the age of any individual Plaintiff. Plaintiffs also do not allege

21

that they had adequate qualifications for a position with MEMS or that MEMS had positions available.  Thus, Plaintiffs fail to plausibly plead their claim of age discrimination under the NJLAD.  Count IV is dismissed without prejudice.

## V. CONCLUSION

In sum, the Court **GRANTS** Defendant's motion.  Plaintiffs are collaterally estopped from litigating their status as Township of Mahwah employees and the claims as to all Individual Defendants are dismissed without prejudice (unless the claim is otherwise dismissed with prejudice).  Count I is dismissed without prejudice as to 42 U.S.C. § 1983 and is dismissed with prejudice as the NJCRA.  Count II is dismissed with prejudice.  Count III is dismissed with prejudice as to Section 1983 and without prejudice regarding the NJCRA.  Count IV is dismissed without prejudice.  Plaintiffs have thirty (30) days to file an amended complaint, if they so choose.  An appropriate order accompanies this opinion.

**Date:** January 13, 2017

JOHN MICHAEL VAZQUEZ
**UNITED STATES DISTRICT JUDGE**